IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN LEGRAND,                   :        Civil No. 3:12-CV-743
                                :
        Plaintiff,              :
                                :
    v.                          :        (Judge Kosik)
                                :
UNITED STATES OF AMERICA, et al., :      (Magistrate Judge Carlson)
                                :
        Defendants.             :

REPORT AND RECOMMENDATION

I.    Statement of Facts and of The Case

The plaintiff in this case is a federal prisoner who was formerly housed in the United States Penitentiary, Canaan.  On April 20, 2012, LeGrand filed a complaint which, liberally construed, brought a Bivens[1] constitutional tort action against six prison officials, Erika Fenstermaker, a grievance coordinator at the prison, Henry Sadowski, Regional Counsel, Warden Ronnie Holt, Captain Breckon, Food Service Administrator Ryan, and Medical Service Director Paone.  In his initial complaint LeGrand alleged that the defendants violated his constitutional right under the Eighth Amendment to be free from cruel and unusual punishment.  (Doc. 1.)  The complaint

[1]Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

also recited that the plaintiff was endeavoring to bring an action against the United States of America pursuant to the Federal Tort Claims Act ("FTCA") 28 U.S.C. § 2401, *et seq*. and 28 U.S.C. § 2675, *et seq*.

The plaintiff's *pro se* complaint recited that, on June 25, 2011, the prison served inmates chicken fajitas. (Doc. 1.) According to the plaintiff, the chicken was bad, and was tainted with salmonella bacteria. (Id.) Consequently, the plaintiff contracted food poisoning, and suffered excruciating pain and symptoms which included headaches, diarrhea, abdominal pains, nausea, chills, vomiting, inability to eat and profuse sweating. (Id.) Alleging negligence and deliberate indifference on behalf of the defendant prison officials in the preparation and service of this food, the plaintiffs sought damages from both the United States and these individual defendants in a lawsuit couched both as a Bivens constitutional tort action and as an action brought under the Federal Tort Claims Act, 28 U.S.C. § 2675, *et seq.*

Two years of mediation efforts and pre-trial proceedings then ensued in this case. Presently, the defendants have filed a motion for partial summary judgment challenging the Bivens claims initially lodged by LeGrand against these six individual defendants, which is now pending before this Court. (Doc. 89.) It is only at this late juncture that LeGrand has now moved to amend his complaint. (Doc. 182.) LeGrand's motion to amend proposes to alter this case in dramatic, profound,

and frequently frivolous ways nearly three years after the event giving rise to this lawsuit. (Doc. 182-1.)  The proposed amended complaint would add 17 named and unnamed defendants to this lawsuit, and alleges that this June, 2011 food poisoning episode was part of a far-reaching, decades-spanning conspiracy which stretched over twenty years.  The amended complaint alleges that this conspiratorial activity violated the Constitution as well as the Occupational Safety and Health Act (OSHA) and other consumer protection laws.  (Id.)  The defendants have opposed this belated amendment of LeGrand's complaint, (Doc. 188.), and this motion is now ripe for resolution.

For the reasons set forth below, it is recommended that this motion to amend be denied.

## II.   Discussion

### A.   Rule 15 Standard of Review

Rule 15 of the Federal Rules of Civil Procedure governs amendments and supplementation of pleadings. Fed. R. Civ. P., Rule 15. Rule 15(a) authorizes a party to amend his pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of the responsive pleading, or 21 days after service of a dispositive motion under Rule 12, whichever is earlier.  Fed. R. Civ. P. 15(a)(1)(A) and (B).  "In all other cases, a

party may amend its pleading only with the opposing party's written consent, or the court's leave," which courts are to freely give "when justice so requires."  Fed. R. Civ. P. 15(a)(2).

Consistent with the plain language of this rule, leave to amend rests in the discretion of the court.  That discretion, however, is governed by certain basic principles, principles that are embodied in Rule 15.  In this regard, while Rule 15 provides that leave to amend should be freely given when justice so requires, the district court still retains broad discretion to deny a motion to amend, Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001), and may deny a request:

> If the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party.  Adams, 739 F.2d at 864. Delay becomes "undue," and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend.  Cureton, 252 F.3d at 273 (citing Adams, 739 F.2d at 868; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir.1993)).  Thus, our review of the question of undue delay . . . will "focus on the movant's reasons for not amending sooner," Cureton, 252 F.3d at 273, and we will balance these reasons against the burden of delay on the District Court.  Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir.1988).

Bjorgung v. Whitetail Resort, LP, supra, 550 F.3d at 266.

Furthermore, "'[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.'  In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) ('Burlington'); Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir.1993). 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Burlington, 114 F.3d at 1434." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). Moreover, a party seeking to supplement pleadings must act in a diligent fashion. Thus, for example, "[a] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them. Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654 (3d Cir.1998)." Krantz v. Prudential Investments Fund Management LLC, 305 F.3d 140, 144 (3d Cir. 2002).

Finally, in every instance, the exercise of this discretion must be guided by the animating principle behind Rule 15, which is "to make pleadings a means to achieve an orderly and fair administration of justice." Griffin v. County School Bd. of Prince Edward County, 377 U.S. 218, 227 (1964). Therefore, in considering a motion to amend we must always "appl[y] Rule 15 . . . in a manner aimed at securing the just, speedy and inexpensive determination of every action." CMR D.N. Corp. v. City Of Philadelphia, No. 07-1045, 2011 WL 857294, *4 (E.D.Pa. March 11,2011)(Stengel, J.).

### B.     This Motion to File an Amended Complaint Should Be Denied

Judged against these standards, in this case, it is submitted that the proper exercise of the court's discretion,  Hassoun v. Cimmino, 126 F.Supp.2d 353, 360-61 (D.N.J.2000), calls for denial of this motion to file an amended complaint.  Indeed, a dispassionate assessment of this motion reveals that it runs afoul of virtually all of the factors which guide the exercise of judicial discretion in this field.

At the outset, it is clear that there has been undue delay in the pursuit of these matters by the plaintiff.  As we have noted, "Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend. Cureton, 252 F.3d at 273 (citing Adams, 739 F.2d at 868; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir.1993)). Thus, our review of the question of undue delay . . . will 'focus on the movant's reasons for not amending sooner,' Cureton, 252 F.3d at 273, and we will balance these reasons against the burden of delay on the District Court. Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir.1988)." Bjorgung v. Whitetail Resort, LP, supra, 550 F.3d at 266.

Here the plaintiff's conduct presents a paradigm of undue delay.  The plaintiff has had ample prior opportunities to amend these pleadings over the past two years to add this wide-ranging array of claims and parties, and chose not to do so.  On these

facts there is simply no justification for the two year delay in seeking to exponentially expand this lawsuit, and permitting this unwarranted expansion of this litigation after years would prolong and delay the resolution of this case for all parties in this litigation. Therefore, given these facts, recited by the plaintiff in his complaint and amended complaint, when "our review of the question of undue delay . . . 'focus[es] on the movant's reasons for not amending sooner,' Cureton, 252 F.3d at 273, and we . . . balance these reasons against the burden of delay on the District Court. Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir.1988)," Bjorgung v. Whitetail Resort, LP, supra, 550 F.3d at 266, we find that the movant has not provided good cause for this delay. We further find that the timing of this motion, which was filed two years after this litigation commenced and as the parties were litigating a partial summary judgment motion, is both highly prejudicial to the defendants and places an undue burden on the district court.

This undue delay, in turn, exposes yet another reason why this motion to amend should be denied. As to all of the newly named defendants in this proposed amended complaint, it appears that amendment of the complaint would be futile since these claims are now time-barred. It is well-settled that: "'[a]mong the grounds that could justify a denial of leave to amend are undue delay, . . . , and futility.' In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) ('Burlington'); Lorenz

v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir.1993).  'Futility' means that the

complaint, as amended, would fail to state a claim upon which relief could be granted.

Burlington, 114 F.3d at 1434."  Shane v. Fauver,  213 F.3d 113, 115 (3d Cir. 2000).

Here, LeGrand's amended complaint is futile with respect to these newly named

defendants because it would be subject to dismissal on statute of limitations grounds.

This amended complaint arises out of matter which took place in June of 2011,

nearly three years ago, while LeGrand was housed  in the United States Penitentiary,

Canaan.  Thus, all of the events alleged here occurred more than two years ago.  It is

well-settled that Bivens claims are subject to the state statute of limitations for

personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 266-67 (1985).   In

Pennsylvania, the statute of limitations for a personal injury action is two years.  42

Pa.C.S. § 5524.  A cause of action accrues for statute of limitations purposes when

the plaintiff knows or has reason to know of the injury that constitutes the basis of the

cause of action.  Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d

582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d

Cir. 1995).

While this two-year limitations period may be extended based upon a

continuing wrong theory, a plaintiff must make an exacting showing to avail himself

of this grounds for tolling the statute of limitations.  For example, it is well settled

that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)). See also Lake v. Arnold, 232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991). In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001).

In this case, the acts which LeGrand attributes to these newly named defendants had "a degree of permanence which should [have] trigger[ed] the plaintiff's awareness of and duty to assert his . . . rights" when these acts occurred in 2011. Id. The plaintiff's decision to defer filing this amended complaint until 2014, therefore, falls beyond the period prescribed by the statute of limitations, and would warrant dismissal of any claims against these newly named defendants as time-barred, thus making the amendment an exercise in futility.

Nor can LeGrand save this untimely claim by resorting to Rule 15(c), which permits a plaintiff, in specific and narrow circumstances, to amend a complaint "as if it had been filed at the time of the original complaint." Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 189 (3d Cir. 2001).

Pursuant to its terms, Rule 15(c)(1) only applies in three situations:

(1) **When an Amendment Relates Back.** An amendment to a pleading relates back to the date of the original pleading when:

    (A) the law the provides the applicable statute of limitations allows relation back;

    (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or

    (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the

summons and complaint, the party to be brought in by amendment:

    (i)    received such notice of the action that it will not be prejudiced in defending on the merits; and

    (ii)   knew or should have known that the action against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

The United States Court of Appeals for the Third Circuit has explained the application of the rule as follows:

The Rule is written in the conjunctive, and courts interpret [15(c)(1)(C)] as imposing three conditions, all of which must be met for a successful relation back of an amended complaint that seeks to substitute newly named defendants. [First, the claim against the newly named defendants must have arisen out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading]. The second and third conditions are set out in [15(c)(1)(C)(i) and (ii)], respectively, and must be met "within the period provided by Rule 4(m) for service of the summons and complaint," Fed. R. Civ. P. [15(c)(1)(C)], which is "120 days after the filing of the complaint," Fed. R. Civ. P. 4(m). The second condition is that the newly named party must have "received such notice of the institution of the action [within the 120 day period] that the party will not be prejudiced in maintaining a defense on the merits." Fed. R. Civ. P. [15(c)(1)(C)(i)]. Urrutia [v. Harrisburg County Police Dept., 91 F.3d 451, 458 (3d Cir. 1996)] states that this condition "has two requirements, notice and the absence of prejudice, each of which must be satisfied." 91 F.3d at 458. The third condition is that the newly named party must have known, or should have known, (again, within the 120 day period) that "but for a mistake" made by the plaintiff concerning the newly named party's identity, "the action would have been brought against" the newly named party in the first place. Fed. R. Civ. P. [15(c)(1)(C)(ii)].

Singletary, 266 F.3d at 194 (some citations omitted).

As the court noted in Singletary, the second condition which must be met before an amended complaint may relate back to the date of the original filing is that the newly named parties identified in that amended complaint must have "'received such notice of the institution of the action [within the 120 day period of the initial filing] that the party will not be prejudiced in maintaining a defense on the merits.' Fed. R. Civ. P. [15(c)(1)(C)(i)]." Id. at 194. Here, nothing in the original filings submitted by LeGrand would have placed dozens of named and unnamed defendants on notice in 2012 that their actions would later be construed in 2014 to be part of a massive, decades-long conspiracy to violate this inmate's constitutional rights. Therefore, LeGrand has not satisfied this threshold criteria for application of Rule 15(c)'s relation back doctrine to his tardy pleading.

There is also a third condition which must be met under Rule 15(c) before an untimely amended complaint can relate back to the date of the filing of the original complaint. It must also be shown that "the newly named party must have known, or should have known, (again, within the 120 day period) that 'but for a mistake' made by the plaintiff concerning the newly named party's identity, 'the action would have been brought against' the newly named party in the first place. Fed. R. Civ. P. [15(c)(1) (C)(ii)]." Id. at 194. In this case, LeGrand has not shown that his original

complaint would have alerted dozens of individuals that but for a mistake concerning their identities they would have been named defendants in April, 2012 when LeGrand first filed this action.

This proposed amended complaint is futile in other respects as well. For example, the plaintiff's complaint does not recite facts which would permit a <u>Bivens</u> claim against various newly prison supervisors or grievance processing officials, who are not alleged to have played any role whatsoever in this food poisoning incident but simply processed inmate administrative grievances relating to this episode that were submitted by inmates after-the-fact.

These allegations are insufficient to state a <u>Bivens</u> claim against these individual defendants. At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was a prison official when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the defendant actively deprived him of a right secured by the Constitution. <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902 (3d Cir. 1997); <u>see also</u> <u>Maine v.Thiboutot</u>, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow from personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence in an

unconstitutional practice.  Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir.

1997).

> In particular, with respect to prison officials it is well-established that:
>
> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

> As the Supreme Court has observed:
>
> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").  Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against a prison official based solely upon the misdeeds of other correctional staff. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the [official] directed the actions of supervisees or actually knew of the actions and acquiesced in them.* See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F.Appx. 178, 181 (3d Cir. 2006)(emphasis added).

Here, in a number of instances the plaintiff does not allege that proposed newly named defendants directed the conduct complained of by the plaintiff, or had advance knowledge of that conduct and acquiesced in it. In fact, beyond naming these defendants in the caption of the complaint, this pleading contains no factual allegations regarding many of these defendants. To the extent that the complaint premises the liability of any particular defendant upon the assertion that the defendant had some oversight responsibility for processing prisoner grievances filed after-the-fact, without setting forth any further factual basis for a claim against her in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison official and compels dismissal of this defendant. Hudson v. City of

-15-

McKeesport, 241 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

Nor can an inmate sustain constitutional claims against prison officials based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, . . . , were named only for their supervisory roles in the prison system.  The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third Circuit has recently held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances. See Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).  In this case fairly construed many of the claims belatedly lodged against individuals by LeGrand consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim.  Therefore, these individual defendants would be entitled to be dismissed from this case, and this particular amendment would be futile.

-17-

LeGrand's amended complaint may well be futile on other scores as well. For

example, with respect to these individual defendants, the defendants allege, without

contradiction by LeGrand that the plaintiff has never exhausted his administrative

remedies against these officials, as he was required to do under the Prison Litigation

Reform Act of 1996 (PLRA) which provides that a prisoner asserting claims under

Bivens first exhaust all administrative remedies available to him. See 42 U.S.C.

§1997e. As a legal matter, exhaustion is a mandatory prerequisite to filing a lawsuit

and prisoners must exhaust administrative remedies as to any claim that arises in the

prison setting, regardless of any limitations on the kind of relief available through the

grievance process. See Woodford v. Ngo, 548 U.S. 81 (2006); Porter v. Nussle, 534

U.S. 516 (2002); Booth v. Churner, 532 U.S. 731 (2001). The PLRA contains no

futility exception that would excuse a failure to exhaust, Booth, 532 U.S. at 741 n.6,

and a district court lacks the authority to otherwise "excuse compliance with the

exhaustion requirement." See Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000).

Therefore, this failure to exhaust–which LeGrand has not disputed–would also render

LeGrand's amended complaint an exercise in futility.

Further, LeGrand's OSHA claims are likely futile since " [a] violation of an

OSHA regulation does not, however, create a private right of action." Dravo Corp.

v. Occupational Safety & Health Review Comm'n, 613 F.2d 1227, 1230, n. 2 (3d Cir.

1980).  Indeed, [i]t is well-settled that OSHA does not create a private right of action.

See, e.g., Ries v. Nat'l R.R. Passenger Corp., 960 F.2d 1156, 1164 (3d Cir.1992)

citing United Steelworkers of Am. v. Marshall, 647 F.2d 1189, 1235-36

(D.C.Cir.1980); Dravo Corp. v. Occupational Safety & Health Review Comm'n, 613

F.2d 1227, 1230 n. 2 (3d Cir.1980); Jeter v. St. Regis Paper Co., 507 F.2d 973, 976-

77 (5th Cir.1975); Byrd v. Fieldcrest Mills, Inc., 496 F.2d 1323 (4th Cir.1974) (per

curiam); Russell v. Bartley, 494 F.2d 334, 336 (6th Cir.1974)." Stephens v. High

Voltage Maint. Co., 323 F. Supp. 2d 650, 653 (E.D. Pa. 2004).  Likewise, LeGrand's

efforts to present a claim under the Unfair Trade Practices Act is entirely futile since

that act only applies to persons, corporations, and partnerships, and does not apply

to the federal government.  See 15 U.S.C. § 45(a)(2).

In sum, we find that the amendment proposed by LeGrand is both untimely,

and entirely futile on multiple scores.  Therefore, it is recommended that this motion

to amend be denied.

## III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

plaintiff's motion for leave to file an amended complaint (Doc. 182.) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of June, 2014.


*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge