## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN LEGRAND, | : | |
| | : | Civil No. 3:12-CV-743 |
| **Plaintiff** | : | |
| | : | (Judge Kosik) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| UNITED STATES OF AMERICA, | : | |
| et al., | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.      Statement of Facts and of the Case

In its current form this case presents a singular set of circumstances.  The plaintiff in this case is a federal prisoner who was formerly housed in the United States Penitentiary, Canaan.  On April 20, 2012, LeGrand filed a complaint which, liberally construed, brought a Bivens[1] constitutional tort action against six prison officials, Erika Fenstermaker, a grievance coordinator at the prison, Henry Sadowski, Regional Counsel, Warden Ronnie Holt, Captain Breckon, Food Service Administrator Ryan, and Medical Service Director Paone.  In his initial complaint LeGrand alleged that the defendants violated his constitutional right under the Eighth Amendment to be free from cruel and unusual punishment.  (Doc. 1.)  The

---

[1]Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

complaint also recited that the plaintiff was endeavoring to bring an action against the United States of America  pursuant to the Federal Tort Claims Act ("FTCA") 28 U.S.C. § 2401, *et seq*. and 28 U.S.C. § 2675, *et seq*.

The plaintiff's *pro se* complaint recited that, on June 25, 2011, the prison served inmates chicken fajitas.  (Doc. 1.)  According to the plaintiff, the chicken was bad, and was tainted with salmonella bacteria.  (Id.)  Consequently, the plaintiff contracted food poisoning, and suffered excruciating pain and symptoms which included headaches, diarrhea, abdominal pains, nausea, chills, vomiting, inability to eat and profuse sweating.  (Id.)  Alleging negligence and deliberate indifference on behalf of the defendant prison officials in the preparation and service of this food, the plaintiffs sought damages from both the United States and these individual defendants in a lawsuit couched both as a Bivens constitutional tort action and as an action brought under the Federal Tort Claims Act, 28 U.S.C. § 2675, *et seq.*

Two years of mediation efforts and pre-trial proceedings then ensued in this case.  Presently, the defendants have filed a motion for partial summary judgment challenging the Bivens claims initially lodged by LeGrand against these six individual defendants.  (Doc. 89.)  This motion, in part, cited a series of  profound procedural failures by the plaintiff, a failure to properly exhaust his administrative

remedies.  Such exhaustion is required by law before an inmate may proceed into federal court. Having been cited by the defendants for these profound procedural shortcomings, the plaintiff has compounded this error by failing to respond to this partially dispositive motion.  Thus, a plaintiff who is alleged to have ignored important procedural rules, has now discounted another set of cardinal procedural benchmarks.  In the face of this cascading array of procedural failures, we recommend that this action be dismissed.

This *pro se* civil rights action was initially brought by the plaintiff, a federal prisoner, through the filing of a complaint  on April 20, 2012.  (Doc. 1.)  As a *pro se* litigant the plaintiff was advised by this Court at this outset of this lawsuit of his responsibilities in this litigation.  Thus, on April 20, 2012, the district court entered its Standing Practice Order in this case, an order which informed the plaintiff of his responsibility to reply to defense motions, and warned him in clear and precise terms of the consequences which would flow from a failure to comply with briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion.  The motion may, therefore, be granted if:  (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 15, p.2.)

On October 1, 2012, the defendant filed a motion for partial summary judgment, in this case.  (Doc. 89.)  This motion raised a straightforward legal claim, arguing that with respect to the individual defendants named in this <u>Bivens</u> action the plaintiff had failed to timely exhaust his administrative remedies before filing this complaint, as required by law.

While we deferred action on this motion for a period of time in order to allow for mediation of these claims, on February 7, 2014, we entered a briefing scheduling order in this case, which underscored for the plaintiff in clear and precise terms his obligation to respond to this motion, as well as the consequences which would flow from a failure to respond, stating:

> With respect to the outstanding motion, the plaintiff shall file a response to the motion in accordance with Local Rule 7.6 on or before **February 28, 2014**.  Pursuant to Local Rule 7.7 the movants may then file a reply brief within 14 days of the filing of this response, or on or before **March 14, 2014**.  All briefs must conform to the requirements prescribed by Local Rule 7.8.

> The plaintiff, who is proceeding *pro se*, is advised that Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions, and provides that

>> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion.  *Any party who fails to comply with this rule shall be deemed not to oppose such motion*.  Nothing in this

> rule shall be construed to limit the authority of the court
> to grant any motion before expiration of the prescribed
> period for filing a brief in opposition.  A brief in
> opposition to a motion for summary judgment and LR
> 56.1 responsive statement, together with any transcripts,
> affidavits or other relevant documentation, shall be filed
> within twenty-one (21) days after service of the movant's
> brief.

Local Rule 7.6 (emphasis added).

> It is now well-settled that "Local Rule 7.6 can be applied to grant a
> motion to dismiss without analysis of the complaint's sufficiency 'if a
> party fails to comply with the [R]ule after a specific direction to
> comply from the court.' Stackhouse v.Mazurkiewicz, 951 F.2d 29, 30
> (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09-1704,
> 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010).  Therefore, a failure
> to comply with this direction may result in the motion being deemed
> unopposed and granted.

(Doc. 171.)

LeGrand plainly understood the necessity of timely filing a brief in

opposition to this motion.  Indeed, he twice sought and obtained an extension of

time in which to reply to this partially dispositive motion.  (Docs. 177, 178, 185,

186.)  Through our decisions granting these extensions of time to the plaintiff

LeGrand has been afforded three months to file a response to this motion, and was

last given a deadline of May 5, 2014, in which to respond to this motion.  Despite

this explicit notice and these multiple extensions of time, the plaintiff has not

responded to this motion, and the time for responding has now passed.  Therefore,

in the absence of any timely response by the plaintiff, we will deem the motion to

be ripe for resolution.

For the reasons set forth below, we recommend that this motion be granted.

II.   **Discussion**

    A.   **Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted**

At the outset, under the Local Rules of this Court the plaintiff should be

deemed to concur in this motion, since the plaintiff has failed to timely oppose the

motion, or otherwise litigate this case.  This procedural default completely

frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and

under the Rules of this Court warrants dismissal of the action, since  Local Rule 7.6

of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to

motions and  provides that

> Any party opposing any motion, other than a motion for summary
> judgment, shall file a brief in opposition within fourteen (14) days
> after service of the movant's brief, or, if a brief in support of the
> motion is not required under these rules, within seven (7) days after
> service of the motion.  *Any party who fails to comply with this rule
> shall be deemed not to oppose such motion*.  Nothing in this rule shall
> be construed to limit the authority of the court to grant any motion
> before expiration of the prescribed period for filing a brief in
> opposition.  A brief in opposition to a motion for summary judgment

and LR 56.1 responsive statement, together with any transcripts,
affidavits or other relevant documentation, shall be filed within
twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to

dismiss without analysis of the complaint's sufficiency 'if a party fails to comply

with the [R]ule after a specific direction to comply from the court.' Stackhouse v.

Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal,

Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case

the plaintiff has not complied with the Local Rules, or this Court's orders, by filing

a timely response to this motion. Therefore, these procedural defaults by the

plaintiff compel the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal
> Rules are meant to be applied in such a way as to promote justice. *See*
> Fed.R.Civ.P. 1. Often that will mean that courts should strive to
> resolve cases on their merits whenever possible. However, justice also
> requires that the merits of a particular dispute be placed before the
> court in a timely fashion ...." McCurdy v. American Bd. of Plastic
> Surgery, 157 F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet

of our legal system. A failure on our part to enforce compliance with the rules, and

impose the sanctions mandated by those rules when the rules are repeatedly

breached, "would actually violate the dual mandate which guides this Court and

motivates our system of justice: 'that courts should strive to resolve cases on their

merits whenever possible [but that] justice also requires that the merits of a

particular dispute be placed before the court in a timely fashion'." Id. Therefore,

we are obliged to ensure that one party's refusal to comply with the rules does not

lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed

to comply with Local Rule 7.6 by filing a timely response to this dispositive

motion. This failure now compels us to apply the sanction called for under Rule

7.6 and deem the plaintiff to not oppose this motion.

**B.     Dismissal of this Case Is Also Warranted Under Rule 41**

Beyond the requirements imposed by the Local Rules of this Court, Rule

41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil

action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to

comply with these rules or a court order, a defendant may move to dismiss the

action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding

dismissal of actions for failure to prosecute rest in the sound discretion of the court,

and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel

College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion,

however, while broad is governed by certain factors, commonly referred to as

Poulis factors.  As the United States Court of Appeals for the Third Circuit has

noted:

> To determine whether the District Court abused its discretion [in
> dismissing a case for failure to prosecute], we evaluate its balancing of
> the following factors:  (1) the extent of the party's personal
> responsibility; (2) the prejudice to the adversary caused by the failure
> to meet scheduling orders and respond to discovery; (3) a history of
> dilatoriness; (4) whether the conduct of the party or the attorney was
> willful or in bad faith; (5) the effectiveness of sanctions other than
> dismissal, which entails an analysis of alternative sanctions; and (6)
> the meritoriousness of the claim or defense.  Poulis v. State Farm Fire
> and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to

determine whether a District Court has abused its discretion in dismissing for

failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir.

2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)).  Therefore, "[i]n

balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical

calculation' to determine whether a District Court abused its discretion in

dismissing a plaintiff's case.  Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d

Cir.1992)." Briscoe v. Klaus,  538 F.3d at 263. Consistent with this view, it is

well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222,

[and it is] clear that 'not all of the Poulis factors need be satisfied in order to

dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at

263.  Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction.  See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action.  At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are now entirely attributable to the plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to defense motions.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.  Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration. As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment."  Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d

Cir.1994) (internal quotation marks and citation omitted).  Generally,
prejudice includes "the irretrievable loss of evidence, the inevitable
dimming of witnesses' memories, or the excessive and possibly
irremediable burdens or costs imposed on the opposing party." Id. at
874 (internal quotation marks and citations omitted). . . .  However,
prejudice is not limited to "irremediable" or "irreparable" harm. Id.;
see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003);
Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683,
693-94 (3d Cir.1988). It also includes "the burden imposed by
impeding a party's ability to prepare effectively a full and complete
trial strategy." Ware, 322 F.3d at 222.

Briscoe  v. Klaus, 538 F.3d at 259-60.

    In this case the plaintiff's failure to litigate this claim or comply with court

orders now wholly frustrates and delays the resolution of this action.  In such

instances, the defendants are plainly prejudiced by the plaintiff's continuing

inaction and dismissal of the case clearly rests in the discretion of the trial judge.

Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve

pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506

(3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v.

Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file

amended complaint prejudices defense and compels dismissal).

    When one considers the third Poulis factor-the history of dilatoriness on the

plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  In

this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes

a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874." Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted). Here, the plaintiff has allegedly failed to timely file this lawsuit and now has failed to respond to a defense motion which highlights this earlier procedural failure. The plaintiff has also failed to timely file pleadings, and has not complied with orders of the Court. Thus, the plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874.

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case. In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994). At this juncture, when the plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, and has violated the Local Rules, the Court is compelled to conclude that the

plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant. The plaintiff cannot refuse

to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him.  Furthermore, it is well-settled that " 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>,  538 F.3d at 263. Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, the plaintiff's claims clearly fail on their merits, yet another factor which favors dismissal of this action.  The legal flaws inherent in these claims are discussed separately below.

## C.    <u>The Plaintiff's Claims Fail on Their Merits</u>

As we have previously observed, this case presents an extraordinary circumstance.  The plaintiff, a federal prisoner, has sued his former jailers, alleging that they have violated his constitutional rights.  However, it appears that  the plaintiff has indulged in a profound procedural failure, a failure to exhaust administrative remedies within the prison system before filing this complaint. Having been cited by the defendants for this profound procedural shortcoming, the plaintiff has compounded this error by failing to respond to this motion for partial summary judgment.  Thus, a plaintiff who is alleged to have ignored one set of

important procedural rules, has now discounted a second set of procedural benchmarks.

In this case the plaintiff's failure to timely pursue these administrative remedies–which is undisputed on this record–has substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made here grounded in alleged violations of the Eighth Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce

judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court."  Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards.  And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages.  In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring.  An across-the-board exhaustion requirement also promotes judicial efficiency. . . .  Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . .  In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained.  The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures.  All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has

been held that there is no futility exception to § 1997e's exhaustion requirement.

Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006). Furthermore, applying this procedural default component to the exhaustion requirement, Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), it has been held that:

> As for the failure to the identify named defendants on the grievance form, . . . to the extent the identity of a defendant was "a fact relevant to the claim," . . . in the absence of any justifiable excuse, a[n] inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA.

<u>Williams v. Pennsylvania Dep't. of Corrections</u>, 146 F. App'x 554, 557(3d Cir. 2005).[1]  Thus, "it is clear, regardless of the purpose of the requirement, that <u>Spruill</u> requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default."  <u>Hemingway v. Ellers</u>, No. 07-1764,  2008 WL 3540526, *11 (M.D.Pa. Aug.12, 2008).

This broad rule favoring full exhaustion admits of one, narrowly defined exception.  If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement.  <u>See</u> <u>Camp v. Brennan</u>, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." <u>Davis v. Warman</u>, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances", <u>Harris v. Armstrong</u>, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate."  <u>Davis v. Warman</u>,

_____

[1]While the <u>Williams</u> decision is not precedential, it is highly persuasive as a "paradigm of the legal analysis [this Court] should . . . follow." <u>Drinker v. Colonial Sch. Dist.</u>, 78 F.3d 859, 864 n.12 (3d Cir. 1996). We find the reasoning in <u>Williams</u> compelling, and recommend that this reasoning be extended to the instant case.

supra, 49 F. App'x at 368.  See also Brown v. Croak, 312 F.3d 109, 110 (3d Cir.

2002) (assuming that prisoner with failure to protect claim is entitled to rely on

instruction by prison officials to wait for outcome of internal security investigation

before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000)

(exhaustion requirement met where Office of Professional Responsibility fully

examined merits of excessive force claim and uncontradicted correctional officers

impeded filing of grievance).

However, in the absence of competent proof that an inmate was misled by

corrections officials, or some other extraordinary circumstances, inmate requests to

excuse a failure to exhaust are frequently rebuffed by the courts.  Thus, an inmate

cannot excuse a failure to timely comply with these grievance procedures by simply

claiming that his efforts constituted "substantial compliance" with this statutory

exhaustion requirement.  Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005).

Nor can an inmate avoid this exhaustion requirement by merely alleging that the

Department of Corrections policies were not clearly explained to him.  Davis v.

Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Furthermore, an inmate's confusion

regarding these grievances procedures does not, standing alone, excuse a failure to

exhaust.  Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003).  Moreover, an inmate

cannot cite to alleged staff impediments to grieving a matter as grounds for

excusing a failure to exhaust, if it also appears that the prisoner did not pursue a

proper grievance once those impediments were removed.  Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

Thus, in this setting, the Prison Litigation Reform Act requires that an inmate fully exhaust his administrative remedies before proceeding into federal court, an administrative exhaustion requirement which entails full compliance with grievance procedures and timelines, as well as the basic requisite that the inmate identify those against whom he has a grievance during the administrative process before he may name these individuals as defendants in a federal lawsuit.  Judged against these benchmarks, this complaint fails with respect to these six individual defendants named in the complaint since the defendants have asserted, without contradiction by the plaintiff, that none of the matters set forth in the complaint have been fully and properly exhausted within the prison grievance system.  This failure to exhaust is fatal to this case, and compels dismissal of this action.

In sum, this merits analysis reveals that this motion to dismiss is on its face meritorious.  Therefore, we find that all of the Poulis factors call for dismissal of this case.

Having concluded that this *pro se* complaint is flawed in a profound way, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an

opportunity to amend a complaint before the complaint is dismissed in its entirety,

see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d

Cir. 2007), unless it is clear that granting further leave to amend would be futile, or

result in undue delay.  Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004).  In this

case, the current complaint fails to state a viable civil rights cause of action, the

factual and legal grounds proffered in support of this complaint make it clear that

the plaintiff has no right to relief, and the plaintiff has declined to respond to court

orders, or otherwise litigate these claims.  On these facts, we conclude that granting

further leave to amend would be futile or result in undue delay.  Alston v. Parker,

363 F.3d 229, 235 (3d Cir. 2004).  Therefore, it is recommended that the complaint

be dismissed with respect to these six individual defendants without further leave

to amend.

### III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

defendant's motion for partial summary judgment, (Doc. 89.), be GRANTED and

the plaintiff's complaint be dismissed as to the following defendants:  Erika

Fenstermaker, a grievance coordinator at the prison, Henry Sadowski, Regional

Counsel, Warden Ronnie Holt, Captain Breckon, Food Service Administrator

Ryan, and Medical Service Director Paone.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of June, 2014.

*S/MARTIN C. CARLSON*
Martin C. Carlson
Unite States Magistrate Judge